

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: June 01, 2015.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 12-53080-CAG |
| | § | |
| CHARLES A. HURIEGA, II, | § | |
| | § | CHAPTER 13 |
| Debtor. | § | |

| | | |
|---|---|---|
| CHARLES A. HURIEGA, II, | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | ADVERSARY NO. 13-05058-CAG |
| | § | |
| NATIONSTAR MORTGAGE, LLC, | § | |
| Defendant. | § | |
| | § | |
| v. | § | |
| | § | |
| CARLOS L. HURIEGA and | § | |
| ELEANOR HURIEGA, | § | |
| Third-Party Defendants. | § | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 42)**

1

Came on to be considered the above-numbered adversary proceeding, and in particular, Defendant Nationstar Mortgage, LLC's Motion for Summary Judgment (ECF No. 42) ("Motion For Summary Judgment") filed on October 6, 2014, responses thereto, arguments of counsel, and supporting evidence. Venue is proper under 28 U.S.C. § 1408(1)(2012). This proceeding is referred to this Court under the District Court's Standing Order of Reference.

This Court has jurisdiction over this matter under 28 U.S.C. § 157(b)(2)(K)(2012). The parties seek to determine the extent of a lien and therefore this matter "stems from the bankruptcy itself" and may constitutionally be decided by a bankruptcy judge. ***Lopez v. Credit Union One*** (***In re Lopez***), 511 B.R. 517, 519 (Bankr. N.D. Ill. 2014) (referencing ***Stern v. Marshall***, 131 S.Ct. 2594, 2618 (2011)).[1]

### LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Bankruptcy Procedure 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). If summary judgment is appropriate, the Court may resolve the case as a matter of law. ***Celotex Corp.***, 477 U.S. at 323; ***Blackwell v. Barton***, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." ***James v. Sadler***,

---

[1] On April 27, 2015, the Court held a status hearing on this matter, where both parties, on the record, agreed that this Court lacks jurisdiction over Defendant's Texas Constitutional Mechanics Lien claims.

909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of a quality sufficient so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita*, 475 U.S. at 585–87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial"). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007). In determining whether a genuine issue of material fact exists, the non-moving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists. A genuine issue of material fact is not raised by mere conclusory allegations or bald assertions unsupported by specific facts. *Leon Chocron Publcidad Y Editoria, S.A. v. Jymm Swaggart Ministries*, 990 F.2d 1253 (5th Cir. 1993).

### BACKGROUND

In 1979, Plaintiff Charles Huriega, II's ("Debtor") parents, Carlos and Eleanor Huriega, acquired 61.724 acres in Kendall County, Texas. The Huriega family built a home on a 1.258 acre tract that was later surveyed off from the rest of the Kendall County Property ("Lot 1"). Debtor and his family resided in that structure as their principal residence for approximately twenty years.

3

Debtor and his now ex-spouse sought to build another structure on a 2.561 acre tract on the Kendall County Property ("Lot 2") that abuts Lot 1. Debtor intended to build a structure that would attach to the existing structure on Lot 1 but would be wholly located in Lot 2. Debtor is an architect and owned and operated a construction company. Therefore, in 2003, Debtor and his now ex-spouse entered into a construction contract with his construction company for the construction of this structure on Lot 2.

Debtor sought financing for this project from Bank of America. Debtor and Bank of America executed a Note in the amount of $220,488.00, secured by a deed of trust lien on Lot 2 (the "2003 Deed of Trust"). The parties dispute whether Bank of America was apprised of Debtor's intentions to integrate the new structure on Lot 2 with the existing structure on Lot 1.[2] Regardless, both parties agreed at hearing on this matter, and at a subsequent status conference, that Bank of America held a valid deed of trust lien on the structure on Lot 2. The 2003 Deed of Trust was subsequently assigned to Nationstar Mortgage LLC (the "Defendant"). At the time of the execution of the 2003 Deed of Trust, the structure on Lot 2 was intended to be and was subsequently used as part of Debtor's principal residence.[3]

The history of ownership of Lots 1 and 2 is also disputed. Debtor contends that he entrusted his now ex-spouse to transfer the title of Lot 1 to herself and Debtor from Debtor's parents, but instead both Lots 1 and 2 were transferred. At the time the 2003 Deed of Trust was

---

[2] Debtor argues that Bank of America was provided a slab survey that contained a reference to an "old house" immediately to the west of the structure that was constructed on Lot 2, and Bank of America arranged for a construction site inspection. (ECF No. 47 ¶8). Defendant claims that Debtor failed to inform Bank of America that Debtor intended to physically attach the single family residence on Lot 2 to a structure already existing on an adjoining tract of land. (ECF No. 42 ¶3)

[3] *See* ECF No. 42, Defendant's Exhibit 12 (Deposition of Charles A. Huriega, II), P 67, Lines 17–22.

4

executed, Debtor and his ex-spouse were the owners of Lots 1 and 2.[4] Debtor subsequently deeded Lot 1 back to his parents.

Debtor filed his Chapter 13 bankruptcy on October 2, 2012—a day before Bank of America posted the Property on Lot 2 for non-judicial foreclosure. Debtor listed Defendant's assignor, Bank of America, as a lienholder on his Schedule D, holding a secured claim in the amount of $197,708.29. On July 24, 2013, Plaintiff filed this Adversary Case seeking to determine the validity and extent of Defendant's 2003 Deed of Trust lien. On October 6, 2014, Defendant filed this Motion for Summary Judgment seeking declaratory relief recognizing Defendant's 2003 Deed of Trust lien as a valid deed of trust lien against Debtor's principal residence; a finding that Defendant's rights under the 2003 Deed of Trust lien are protected from modification by 11 U.S.C. § 1322(b)(2)[5]; and a finding that Defendant holds valid Texas Mechanic's Liens on Lots 1 and 2.

At the initial hearing on Defendant's Motion for Summary Judgment, held on October 6, 2014, the parties came to a number of agreements—that were reiterated at a status hearing on this matter held on April 27, 2015. First, the parties agree that Defendant holds a valid deed of trust lien against Lot 2—i.e. the 2003 Deed of Trust is valid. Second, the parties agree that this Court does not have subject matter jurisdiction over Defendant's Texas Mechanic's Lien claims. As such, the sole relief left for determination by this Court in Defendant's Motion for Summary Judgment is the applicability and effect § 1322(b)(2).[6]

---

[4] None of the parties realized that both Lots 1 and 2 had been transferred until years later. As part of Debtor's divorce with his former spouse, his former spouse deeded both Lots 1 and 2 to Debtor, and Debtor then deed Lot 1 back to his parents.

[5] Unless otherwise noted, all statutory references are to 11 U.S.C., *et seq.*

[6] Defendant also claims that it is entitled to attorney's fees and costs pursuant to Tex. Prop. Code Ann. § 53.156 (West 2011). Defendant may submit a request for attorney's fees and costs to be considered in accordance with Fed. R. Civ. P. 7054 and Local Rules within 14 days of entry of this order.

**ISSUE**

Is the 2003 Deed of Trust "a claim secured only by a security interest in real property that is the debtor's principal residence" within the meaning of § 1322(b)(2), where the 2003 Deed of Trust is only secured by the portion of Debtor's principal residence located on Lot 2?

**DISCUSSION**

A Chapter 13 plan usually may modify the rights of the holders of secured claims; however, a Chapter 13 plan *may not* modify the holders of secured claims that are "secured only by a security interest in real property that is the debtor's principal residence." § 1322(b)(2). The Bankruptcy Code defines the term "debtor's principal residence" as "a residential structure if used as the principal residence by the debtor, including incidental property without regard to whether that structure is attached to real property." § 101(13)(A).

To determine whether a property is the debtor's principal residence, courts in this circuit look to the time the loan was made. *See* 8 *Collier On Bankruptcy* ¶ 1322.06[1][a] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.) (noting circuit split). Additionally, the relevant inquiry under § 1322(b) is not what the lender believed, but rather whether the property was in fact debtor's principal residence. ***In re Lopez***, 511 B.R. at 522. Therefore, while the parties dispute whether Debtor fully disclosed his intention to integrate the two structures, this dispute is inconsequential to the application of § 1322(b)(2). It is uncontroverted that at the time the 2003 Deed of Trust was executed, the structure to be built was to be, and was subsequently used as, a part of Debtor's principal residence.[7]

---

[7] When asked if Debtor was "using the entire structure as [his] [principal] residence," Debtor replied "[y]es, as you -- as anybody uses their house, there are portions in the existing residence that I use and then there are portions in the new residence that I use." ECF No. 42, Defendant's Exhibit 12 (Deposition of Charles A. Huriega, II), P 67, Lines 17–22. Debtor's description of his use of both structures comports with the Bankruptcy Code's definition of a "principal residence." *See* § 101(13)(A). "Principal residence" extends to any residential structure if used as the principal residence by the debtor and explicitly includes even incidental property. *Id*. Further, Debtor "agreed with

6

Nonetheless, Debtor argues that because the 2003 Deed of Trust lien only encumbers part of Debtor's principal residence, the anti-modification provision of § 1322(b)(2) does not apply. A claim secured by real property that is, even in part, not the debtor's principal residence does not fall under the terms of § 1322(b)(2). *Scarborough v. Chase Manhattan Mortg. (In re Scarborough)*, 461 F.3d 406, 411 (3d Cir. 2006). Whereas, a claim that is only secured by a principal residence *does* fall under the terms of § 1322(b)(2), even if that claim is not wholly secured. *See Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 333 (1993); *see also* 8 *Collier On Bankruptcy* ¶ 1322.06[1][a] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.).

Allowing Debtor to modify Defendant's rights under the 2003 Deed of Trust would allow Debtor to modify a claim secured *only* by a security interest in real property that is Debtor's principal residence. This conflicts with the plain language of § 1322(b)(2). While the statute does not speak directly to an instance where the claim is secured by only a portion of a debtor's principal residence, the legislative intent of § 1322(b)(2) is instructive. The primary purpose of § 1322(b)(2) is to encourage the flow of capital into the home lending market. *See Nobelman*, 508 U.S. at 332 (Stevens, J., concurring). Therefore, § 1322(b)(2)'s anti-modification provision is meant to protect home mortgage lenders rather than home owners. *Matter of Washington*, 967 F.2d 173, 175 (5th Cir. 1992). Permitting Debtor to escape § 1322(b)(2)'s anti-modification provision solely because his principal residence was attached to and integrated with another structure favors Debtor's interests over the home mortgage lender—in derogation of legislative intent.[8]

---

Defendants' counsel's characterization of the house on Lot 1 and the addition of Lot 2 as comprising his principal residence." ECF No. 47 ¶ 27 (Plaintiff's Response).

[8] A scenario could be imagined where cunning debtors insulate themselves from § 1322(b)(2) by purposefully restricting home mortgage creditor's interests to less than the debtor's complete principal residence. This scenario is in conflict with the legislative intent of § 1322(b)(2).

7

If a lien on a debtor's primary residence was wholly unsecured, then that lien is not subject to the anti-modification clause. ***Bartee v. Tara Colony Homeowners Assoc. (In re Bartee)***, 212 F.3d 277, 296 (5th Cir. 2000). A wholly unsecured claim is one for which the supporting collateral holds no remaining value. *Id.* at n.3. Here, while the value of Debtor's principal residence on Lot 2 may be diminished by its attachment and integration to another structure, there is *some* value remaining in the portion of the residence encumbered by the 2003 Deed of Trust.[9] Therefore, § 1322(b)(2) prohibits the modification of any of Defendant's rights under the 2003 Deed of Trust.

## CONCLUSION

Having reviewed Defendant Nationstar Mortgage, LLC's Motion for Summary Judgment (ECF No. 42) ("Motion For Summary Judgment") filed on October 6, 2014, responses thereto, arguments of counsel, and supporting evidence, the Court finds that Defendant's rights under the 2003 Deed of Trust cannot be modified pursuant to § 1322(b)(2). As such, Defendant's Motion for Summary Judgment is GRANTED, in part.

Both Debtor and Defendant agreed, on the record, that Defendant's 2003 Deed of Trust is valid lien.[10] Therefore, this Court finds that Defendant's 2003 Deed of Trust Lien is valid.

---

[9] While Debtor integrated the two structures, the degree of work to integrate the two structures was modest. As Debtor states that the "only things that were done to the structure on Lot 1 were moving the air conditioner unit that was located on Lot 1 to Lot 2 at a cost of $550 and there was work that had to be done to tie in the roof between the old structure on Lot 1 and the new structure on Lot 2. The roof had to be tied in so that there were no water leaks . . . There was a hole cut into the side of the old structure to allow access between the two structures . . . The existing septic and water systems of the old house were simply tapped into, as was the electrical service." *See* ECF No. 47, Plaintiff's Exhibit B (Affidavit of Charles A. Huriega, II) ¶ 10. While it would take some degree of work to separate the structures, this does not render the structure on Lot 2 wholly valueless. While practical foreclosure may prove to be complicated, this fact does not alter Defendant's rights under the Bankruptcy Code.

[10] *See* Status Conference April 27, 2015; *see also* Hearing on Defendant's Motion for Summary Judgment October 6, 2014.

Debtor and Defendant also agree that this Court does not have subject matter jurisdiction over the validity of Defendant's purported Texas Constitutional Mechanic's Lien on Lots 1 and 2.[11] Therefore, the Court will not decide this issue.

Defendant also claims that it is entitled to attorney's fees and costs pursuant to Tex. Prop. Code § 53.156. Defendant may submit a request for attorney's fees and costs to be considered in accordance with Fed. R. Civ. P. 7054 and Local Rules within 14 days of entry of this order.

All other relief requested in Defendant's Motion for Summary Judgment is DENIED.

# # #

---

[11] *See* Status Conference April 27, 2015; *see also* Hearing on Defendant's Motion for Summary Judgment October 6, 2014.